County Acquisitions, LLC v Lanser (2025 NY Slip Op 00946)

County Acquisitions, LLC v Lanser

2025 NY Slip Op 00946

Decided on February 19, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 19, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
PAUL WOOTEN
BARRY E. WARHIT
LOURDES M. VENTURA, JJ.

2022-04643
2023-02254
 (Index No. 601922/22)

[*1]County Acquisitions, LLC, appellant, 
v
Katherine Lanser, etc., respondent, et al., defendants.

Robert Bichoupan P.C., Great Neck, NY (Carolyn Bichoupan of counsel), for appellant.
Law Offices of Bernard D'Orazio & Associates, P.C., New York, NY (Steven G. Yudin of counsel), for respondent.

DECISION & ORDER
In an action pursuant to RPAPL article 15 to quiet title to real property, the plaintiff appeals from (1) an order of the Supreme Court, Nassau County (David P. Sullivan, J.), entered June 8, 2022, and (2) an order of the same court entered February 10, 2023. The order entered June 8, 2022, insofar as appealed from, granted the plaintiff's motion for summary judgment on the complaint and declaring that it is the record holder and owner of the subject property only to the extent of conditionally granting the motion unless the defendant Katherine Lanser redeemed the subject property within 90 days from the date of entry of the order. The order entered February 10, 2023, insofar as appealed from, upon granting the plaintiff's motion for leave to reargue the conditional granting of its prior motion for summary judgment on the complaint and declaring that the plaintiff is the record holder and owner of the subject property, in effect, vacated the order entered June 8, 2022, and thereupon denied the plaintiff's prior motion.
ORDERED that the appeal from the order entered June 8, 2022, is dismissed; and it is further,
ORDERED that the order entered February 10, 2023, is modified, on the law, by deleting the provision thereof, upon reargument, denying the plaintiff's prior motion for summary judgment on the complaint and declaring that it is the record holder and owner of the subject property; as so modified, the order entered February 10, 2023, is affirmed insofar as appealed from, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith; and it is further,
ORDERED that one bill of costs is awarded to the defendant Katherine Lanser.
"Title 3 of article 14 of the Real Property Tax Law . . . previously allowed villages to conduct tax lien sales and convey parcels of real property by tax deed" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d 629, 630; see Nassau Prop. Invs., LLC v Goffe, 213 AD3d 679, 679-680). Specifically, after publishing the requisite notice in a local newspaper (see former RPTL 1452), a village was permitted to conduct a public auction for the purpose of selling tax liens, and the [*2]purchasers thereof would each receive a certificate "describing the real property purchased and the sum paid therefor" (id. § 1454[2]). The owner of any property for which a tax lien was sold could thereafter redeem the property "at any time prior to the filing of a notice of pendency of an action to foreclose the lien of such taxes, or prior to conveyance by the village treasurer pursuant to [former RPTL 1464] by paying the village treasurer . . . the sum mentioned in [the tax lien] certificate with interest from the date of sale" (id. § 1456[1]; see Quinn v Wright, 72 AD3d 1052, 1053). If, however, the property was not redeemed within a period of two years after the sale, the purchaser of the tax lien certificate was permitted to commence an action to foreclose the lien or, alternatively, to submit an application to the village treasurer for a deed conveying the property to him or her (see former RPTL 1464[1], [3]; Matter of County of Nassau [Gelb—Siegel], 24 NY2d 621, 624-626; Carr Holdings, LLC v Martinez, 205 AD3d 767, 768). With regard to the application method, the purchaser was first required to mail a notice of redemption to the property owner at least six months prior to submitting the application, thereby affording the owner a final opportunity to redeem the property (see former RPTL 1464[1], [2]; Quinn v Wright, 72 AD3d at 1053). Upon receipt of an application complying with the statutory requirements, including proof of service of the notice of redemption and "surrender of the [tax lien] certificate," the village treasurer was required to issue the requested deed to the purchaser (former RPTL 1464[3]; see Matter of County of Nassau [Gelb—Siegel], 24 NY2d at 624-626). The treasurer's deed "vest[ed] in the [purchaser] an absolute estate in fee, subject, however, to all claims the village, county or state may have thereon for taxes, liens or encumbrances" (former RPTL 1464[3]), and "entitled [the purchaser] to have and possess the real property conveyed" (id. § 1464[5]; see Segar v Youngs, 45 NY2d 568, 571).
However, this statutory scheme "was repealed by the New York State Legislature pursuant to Chapter 602 of the Laws of 1993" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d at 630). That law also repealed article 10 of the RPTL (L 1993, ch 602, § 4), which contained provisions similar to title 3 of article 14 with regard to the enforcement of county taxes (see Land v County of Ulster, 84 NY2d 613, 616-617; Matter of Elinor Homes Co. v St. Lawrence, 113 AD2d 25, 26-27, 30-31). Nonetheless, Chapter 602 of the Laws of 1993, as amended by subsequent legislation, "authorized a village to adopt a local law allowing it to continue to enforce tax liens pursuant to the otherwise repealed sections of RPTL article 14, title 3" (Joel Friedberg Trustee v Metaglo, Inc., 120 AD3d at 630; see L 1994, ch 532, § 9; cf. RPTL 1104[2]). Specifically, that law, as amended, provides, in pertinent part, that "[a] village which conducted a tax sale in 1993 pursuant to [former RPTL 1454] is hereby authorized to adopt a local law without referendum, no later than September 1, 1994, providing that the collection of taxes that shall become liens on or after January 1, 1995 and on or before December 31, 2024 shall be enforced pursuant to title 3 of article 14 of the [RPTL], as the same shall have been in effect on the last day preceding the effective date of this act" (L 2021, ch 562, § 1, amdg L 1993, ch 602, § 6, as amended). In August 1994, the Village of Rockville Centre took advantage of this legislation by adopting Local Law No. 12-1994, which enacted Code of the Village of Rockville Centre (hereinafter Village Code) § 294-8 (see AJM RE Holdings VIII, LLC v Cortese, 40 Misc 3d 444, 446-447 [Nassau Dist Ct, 1st Dist]). The Village thereafter continued to conduct tax lien sales in accordance with the provisions of former title 3 of RPTL article 14.
In May 2018, at a public auction held pursuant to Village Code § 294-8 and former RPTL 1454, the plaintiff purchased a tax lien relating to unpaid real estate taxes on certain property within the Village owned by the defendant Katherine Lanser (hereinafter the defendant) and obtained a tax lien certificate. In May 2021, more than two years after purchasing the tax lien, the plaintiff mailed a notice of redemption to the defendant pursuant to former RPTL 1464, while the Village also sent her a courtesy copy thereof. The defendant, however, failed to redeem the property within the requisite six-month period. Thereafter, by letter dated January 18, 2022, the Village notified the defendant that the plaintiff had submitted an application pursuant to former RPTL 1464 for a treasurer's deed and that the Village was reviewing the application. On February 11, 2022, the Village treasurer issued a treasurer's deed to the plaintiff, which was recorded with the Nassau County Clerk three days later.
On the same day the treasurer's deed was recorded, the plaintiff commenced this action pursuant to RPAPL article 15 to quiet title to the property against, among others, the [*3]defendant. The plaintiff moved for summary judgment on the complaint and declaring that the plaintiff is the record holder and owner of the property. In an order entered June 8, 2022, the court conditionally granted the plaintiff's motion unless the defendant redeemed the property within 90 days from the date of entry of the order. Before the expiration of that 90-day period, the plaintiff moved for leave to reargue its prior motion to the extent that it was only conditionally granted, affording the defendant an additional opportunity to redeem the property. In an order entered February 10, 2023, the court granted leave to reargue and, upon reargument, in effect, vacated the order entered June 8, 2022, and thereupon denied the plaintiff's prior motion for summary judgment on the complaint and declaring that the plaintiff is the record holder and owner of the property. The plaintiff appeals from both orders.
Initially, the appeal from the order entered June 8, 2022, must be dismissed, since that order was vacated by the order entered February 10, 2023, made upon reargument (see Dean Bldrs. Group, P.C. v M.B. Din Constr., Inc., 186 AD3d 1612, 1613; Martinez v 281 Broadway Holdings, LLC, 183 AD3d 712, 713).
Nonetheless, in the order entered June 8, 2022, the Supreme Court improperly afforded the defendant an additional 90 days to redeem the property. "[S]tatutes authorizing tax sales are to be liberally construed in the [property] owner's favor because tax sales are intended to collect taxes, not forfeit real property" (James B. Nutter & Co. v County of Saratoga, 39 NY3d 350, 355-356 [internal quotation marks omitted]; see County of Nassau v Expedia, Inc., 189 AD3d 1346, 1348). However, "[t]he right to redeem land sold to enforce the collection of taxes assessed against it exists only as permitted by statute and under such conditions as are expressed therein" (Matter of Elinor Homes Co. v St. Lawrence, 113 AD2d at 29). "[O]nce the right to redeem is lost, it cannot be revived, even by court order" (LIC Assets, LLC v Chriker Realty, LLC, 131 AD3d 946, 947 [internal quotation marks omitted]). Here, upon concluding that the plaintiff and the Village had complied with the various statutory requirements of former title 3 of RPTL article 14, the court, in effect, determined that the property was properly conveyed to the plaintiff pursuant to the treasurer's deed (see Temple Bnai Shalom of Great Neck v Village of Great Neck Estates, 32 AD3d 391, 391-392; cf. Land v County of Ulster, 84 NY2d at 617-618; Quinn v Wright, 72 AD3d at 1053-1054). Moreover, the defendant did not assert, let alone establish, that the tax lien sale should have been set aside and the treasurer's deed vacated on the grounds of "fraud, collusion, mistake, or misconduct cast[ing] suspicion on the fairness of" the transaction (Liberty Dabar Assoc. v Mohammed, 183 AD3d 880, 882 [internal quotation marks omitted]; see Guardian Loan Co. v Early, 47 NY2d 515, 520-521; Van Wormer v Giovatto, 46 NY2d 751, 752). By the time the court issued the order entered June 8, 2022, the defendant's statutory time period to redeem the property had long since expired, the plaintiff had applied for a treasurer's deed by, inter alia, surrendering the tax lien certificate to the Village, and the property had already been conveyed to the plaintiff (see former RPTL 1456, 1464[1]-[3], [5]). As a result, the defendant's "right to redeem" was "legally extinguished" at that point (Ameritek Constr. Corp. v Gas, Wash & Go, 247 AD2d 418, 420; see Melahn v Hearn, 60 NY2d 944, 945-946; NYCTL 1996-1 Trust v Moore, 51 AD3d 885, 886). Therefore, the court improperly attempted to revive the defendant's right to redeem the property.
Although the Supreme Court seemed to recognize as much in the order entered February 10, 2023, the court nonetheless declined to award the plaintiff the relief sought. The court granted leave to reargue but went beyond the limited scope of the reargument sought by the plaintiff and revisited the question of whether the tax lien sale and deed conveyance process complied with relevant statutes. In conducting this analysis, the court, sua sponte, concluded that the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 (L 2020, ch 381; hereinafter CEEFPA) required the Village, or perhaps the plaintiff, to notify the defendant of her hardship declaration rights thereunder at least 30 days before service of the notice of redemption (see L 2020, ch 381, § 3, part B, subpart B, § 3[2]). Since the record contained no evidence that such notification was ever provided, the court determined that the notice of redemption was defective, requiring denial of the plaintiff's motion for summary judgment on the complaint and declaring that the plaintiff is the record holder and owner of the property. There are two issues with the court's determination, however.
First, the Supreme Court should not have, sua sponte, decided the plaintiff's motion for summary judgment based on whether CEEFPA's requirements were satisfied. The defendant did not raise this issue in her opposition papers, nor is there any indication in the record that the court notified the parties of its intent to consider the issue, and the plaintiff therefore had no opportunity to address the issue in advance of the court's determination. While a court may employ "sua sponte reasoning" in some circumstances, it is generally "inappropriate" to do so when deciding a "dispositive" motion (Citibank, N.A. v Kerszko, 203 AD3d 42, 47). Under the circumstances, "this 'lack of notice and opportunity to be heard implicate[d] the fundamental issue of fairness that is the cornerstone of due process'" (Frank M. Flower & Sons, Inc. v North Oyster Bay Baymen's Assn., Inc., 150 AD3d 965, 966, quoting Rosenblatt v St. George Health & Racquetball Assoc., LLC, 119 AD3d 45, 54).
Second, even if it was appropriate for the Supreme Court to raise the issue of CEEFPA compliance, the court's conclusion that the defendant was entitled to notice of her hardship declaration rights at least 30 days prior to service of the notice of redemption is without merit. CEEFPA, which went into effect in December 2020, states, in relevant part, that "[a]t least thirty days prior to the date on which a sale of a tax lien is scheduled to occur, or upon the filing of a petition of foreclosure of a tax lien, the enforcing officer or other person or entity conducting such tax lien sale or tax foreclosure shall notify the owner of the affected property of such owner's rights under this act and shall notify the owner that a copy of the hardship declaration can be accessed on the New York State Department of Tax and Finance's website and also provide a link to such declaration form" (L 2020, ch 381, § 3, part B, subpart B, § 3[2]; see L 2021, ch 417, § 2, part C, subpart C, § 3[2]). This provision, among others, was originally set to expire on May 1, 2021 (see L 2020, ch 381, § 3, part B, subpart B, § 4), but the State Legislature subsequently amended CEEFPA to extend the deadline until August 31, 2021 (see L 2021, ch 104, § 10), and then until January 15, 2022 (see L 2021, ch 417, § 2, part C, subpart C, § 4). Under CEEFPA, the phrase "[t]ax foreclosure and tax lien sale" is defined as "any such tax lien sale or tax foreclosure pursuant to article 11 of the real property tax law, or any general, special or local law related to real property tax lien sales or real property tax foreclosures" (L 2020, ch 381, § 3, part B, subpart B, § 2; see L 2021, ch 417, § 2, part C, subpart C, § 2[2]), rendering it applicable to this tax lien sale conducted pursuant to Village Code § 294-8 and former RPTL 1454. In other words, CEEFPA, from its effective date in December 2020 through its expiration in mid-January 2022 (see L 2021, ch 417, § 2, part C, subpart C, § 4), entitled a property owner, such as the defendant, to notification of his or her hardship declaration rights at least 30 days "prior to the date on which a sale of a tax lien is scheduled to occur, or upon the filing of a petition of foreclosure of a tax lien" (L 2020, ch 381, § 3, part B, subpart B, § 3[2]). The tax lien sale at issue occurred in 2018, before CEEFPA went into effect, and the Village notified the defendant of the plaintiff's application for a treasurer's deed—the equivalent of "a petition of foreclosure of a tax lien"—by letter dated January 18, 2022 (id.). Since CEEFPA had already expired by that point (see L 2021, ch 417, § 2, part C, subpart C, § 4), the court incorrectly concluded that the notice of redemption was rendered defective based on a failure to comply therewith.
However, on appeal, the defendant contends that the Village's conveyance of the property to the plaintiff pursuant to the treasurer's deed constituted an unlawful taking in violation of the United States Constitution and the New York State Constitution, relying upon the United States Supreme Court's recent decision in Tyler v Hennepin County (598 US 631). The defendant asserts, in effect, that she had a property interest in both the property and the equity therein. Therefore, according to the defendant, the Village's confiscation of the property and transfer of title thereto to the plaintiff, without any payment to her for the value thereof over and above the amount owed on unpaid taxes, or even any procedure to attempt to obtain such surplus funds, amounted to a taking. We note, parenthetically, that the defendant has not asserted any argument regarding the Eight Amendment's Excessive Fines Clause, an issue raised in Tyler but only addressed in the concurring opinion therein (see id. at 648-650 [Gorsuch, J., concurring]; cf. Nassau Prop. Invs., LLC v Goffe, 213 AD3d at 681-682). In any event, since Tyler was issued after the Supreme Court issued the order entered February 10, 2023, and the plaintiff perfected these appeals, we conclude that it is appropriate to consider the defendant's takings argument in the interest of justice (see Gubitosi v Hyppolite, 188 AD3d 1015, 1016; Evans v New York City Tr. Auth., 179 AD3d 105, 111 n).
"The Takings Clause of the Fifth Amendment of the US Constitution, made applicable to the States through the Fourteenth Amendment, . . . provides that private property shall not be taken for public use, without just compensation" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 155 [internal quotation marks omitted]). "The New York Constitution similarly provides that '[p]rivate property shall not be taken for public use without just compensation'" (id., quoting NY Const, art I, § 7[a]). Prior to Tyler, the Court of Appeals determined, for example, that a county's retention of surplus funds following a tax sale pursuant to former article 10 of the RPTL, among other authorities, did not constitute a taking requiring just compensation (see Sheehan v County of Suffolk, 67 NY2d 52, 58-60). This was so, according to the Court, because the property owner's "failure to redeem the property before it ha[d] been resold" constituted a "forfeiture" of the property (id. at 59). Tyler similarly involved a tax sale by a Minnesota county of a property to a third party, where the county was paid far more than the value of the taxes and kept the surplus funds, resulting in a windfall of $25,000 (see Tyler v Hennepin County, 598 US at 634-636). In contrast to Sheehan, however, the United States Supreme Court expressly rejected an argument made by the Minnesota county that the property owner "ha[d] no interest in the surplus because she constructively abandoned her home by failing to pay her taxes" (id. at 646). The Court concluded that the county "had the power to sell [the property owner's] home to recover the unpaid property taxes[,] [b]ut it could not use the toehold of the tax debt to confiscate more property than was due" (id. at 639).
This case, however, involves a somewhat different circumstance. The Village did not sell the property for an amount higher than that owed by the defendant, keeping the surplus funds for its own use. Instead, the Village sold a tax lien to the plaintiff and, after the defendant failed to redeem the property, conveyed title thereto to the plaintiff, allowing it to obtain a windfall. The defendant nonetheless asserts that this situation constitutes a taking without just compensation pursuant to Tyler, while the plaintiff disagrees. Although Tyler did not expressly decide the issue, recent orders from the United States Supreme Court imply that the Court may view its own decision in a way that would render it applicable to the circumstances presented and, at a minimum, indicate that it is still an open question (see Nieveen v TAX 106, 311 Neb 574, 974 NW2d 15, vacated ___ US ___, 143 S Ct 2580; Continental Resources v Fair, 311 Neb 184, 971 NW2d 313, vacated ___ US ___, 143 S Ct 2580; cf. 257-261 20th Ave. Realty, LLC v Roberto, 477 NJ Super 339, 307 A3d 19). Even if Tyler stands for the proposition that the Village's issuance of the treasurer's deed to the plaintiff constituted a taking for public use, it is not necessarily clear whether the appropriate relief would be to invalidate the treasurer's deed, as opposed to, for example, permitting the defendant to pursue a claim for just compensation against the Village (cf. Knick v Township of Scott, 588 US 180, 199-202; Seawall Assoc. v City of New York, 74 NY2d 92, 115-116; Matter of Wallace v Town of Grand Is., 184 AD3d 1088, 1091).
Nonetheless, we are not in a position to decide the defendant's takings contention on this appeal, since it amounts to a constitutional challenge to Village Code § 294-8 and former RPTL article 14, title 3, or at least the relevant provisions thereof. Under these circumstances, the New York State Attorney General and the Village must be notified and afforded an opportunity to weigh in on the defendant's constitutional challenge before a court can render a decision (see CPLR 1012[b]; Executive Law § 71; Matter of Monserrate v Espinal, 194 AD3d 887, 888; Clement v Durban, 147 AD3d 39, 41 n, affd 32 NY3d 337). Even if we could decide this issue without such notice, it would nonetheless be prudent to permit the Supreme Court an opportunity to address it first (see People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408, citing Matter of Van Berkel v Power, 16 NY2d 37, 40). Therefore, we remit the matter to the Supreme Court, Nassau County, for consideration of the defendant's constitutional challenge, after any further briefing, argument, and hearing that the court deems appropriate, and for a new determination thereafter of the plaintiff's motion for summary judgment on the complaint and declaring that the plaintiff is the record holder and owner of the property (see Wells Fargo Bank, N.A. v Cafasso, 223 AD3d 695, 697; U.S. Bank N.A. v Simon, 216 AD3d 1041, 1043; Matter of County of Niagara v Shah, 122 AD3d 1240, 1244). Upon remittal, and before rendering a new determination of the plaintiff's motion, the court shall ensure that the Attorney General and the Village receive the requisite notice (see HSBC Bank USA, N.A. v Gifford, 224 AD3d 447; 45-47-49 Eighth Ave. LLC v Conti, 220 AD3d 473, 474).
BARROS, J.P., WOOTEN, WARHIT and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court